UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL TULLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RUSH COUNTY PROSECUTOR | ) |
| PAUL BARADA, | ) |
| In his individual capacity; and | ) |
| RUSH COUNTY JUVENILE | ) |
| PROBATION OFFICER | ) |
| CATHERINE CUSTER, | ) |
| In her individual capacity, | ) |
| | ) |
| Defendants. | ) |

1 : 08-cv-1243-LJM-JMS

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. This is a complaint to redress the deprivation of rights, liberties and immunities secured to the Plaintiff under the Constitution and laws of the United States of America. This complaint seeks compensation for the Plaintiff for the violation of his rights as protected by the Fourth and Fourteenth Amendments to the United States Constitution.

### II. JURISDICTION

2. Jurisdiction is proper in this Court according to 28 U.S.C. §§ 1331 and 1343(a)(3), this being a suit authorized by 42 U.S.C. § 1983 to redress the deprivation of rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution.

3.  Venue is proper in this court according to 28 U.S.C. § 1391, which allows for an action to be brought in the district and state where the defendants reside or in which the cause of action arose.  All of the parties reside in the Southern District of Indiana and the events occurred in Rush County.

### III.  PARTIES

4.  Plaintiff Michael Tully is and was at all times relevant to this action a resident of the City of Rushville, County of Rush, State of Indiana, United States of America.

5.  Defendant Paul W. Barada is and was at all times relevant to this action the Prosecuting Attorney for Rush County, Indiana, acting outside the scope of his employment, and acting under color of state law.  He is being sued in his individual capacity for his conduct on or around February 28, 2007.

6.  Defendant Catherine Custer is and was at all times relevant to this action the Juvenile Probation Officer for Rush County, Indiana, acting within the scope of her employment, and acting under color of state law.  She is being sued in her individual capacity for her conduct on or around February 13, 2007 and February 28, 2007.

### IV.  FACTUAL ALLEGATIONS

7.  On December 23, 2006, at or around 8:30 p.m., Michael Tully, then age seventeen, and Brock Carfield, then aged sixteen, went raccoon hunting in Rush County Indiana.  Michael and Brock brought with them Michael's .22 caliber rifle and a spotlight.

8.  Michael drove his father's Chevy Avalanche to a bridge on County Road 350 East in Rush County.

9.  When Michael arrived at the bridge, he parked on the side of the road.  Brock got out of the truck with the gun, crossed the road, and walked into the ditch on the opposite side of the road.

10.  Michael and Brock saw two raccoons come out from under the bridge. Michael shined the spotlight on them and Brock fired at them, killing one.  Brock was not on the road when he fired at the raccoon.

11.  Brock returned to Michael's vehicle with a dead raccoon, put the dead raccoon in the bed of the truck, and Michael drove away.

12.  At roughly the same time, Wayne Elwell was in his home approximately 300-350 feet north of the bridge on County Road 350 East where Michael and Brock had stopped.

13.  Elwell observed the headlights of a vehicle near the bridge.  Elwell also saw a spotlight, which Brock had carried with him when he left the truck.  Elwell apparently mistakenly believed the light came from the truck.

14.  A short time later, Elwell heard what he believed to be a gunshot coming from the direction of where he observed the vehicle near the road.  However, Elwell was not looking in the direction of the bridge when he heard what he believed to be the gunshot, and he did not see anything indicating that a gun was fired from the area near the bridge.

15.  Elwell called the Sheriff's Department to report what he had heard.

16.  Elwell then heard what he believed was a second shot, and then saw someone go into the ditch.  Elwell then placed a second call to the Sheriff's Department.

3

17. Rush County Sheriff's Department deputy officer Randy Chandler responded to Elwell's calls. While driving to the bridge and toward the residence of Elwell, Deputy Chandler observed a dark vehicle driving in the opposite direction. Deputy Chandler arrived at the bridge, but found that the vehicle had left. Deputy Chandler turned around to follow the vehicle that passed him on his way to the bridge.

18. Deputy Chandler followed, driving at a high rate of speed for approximately six miles, without his emergency lights or siren on. Michael, who had been driving within the speed limit, decided to pull into a parking lot to allow a seemingly irate driver pass. After allowing the vehicle to pass, Michael pulled back onto the road. Chandler then turned around and pulled up behind the Michael's truck after Michael had stopped. Deputy Chandler then turned on his emergency lights and walked up to the vehicle.

19. Deputy Chandler asked the driver of the truck, Michael Tully, where the gun was. Michael pointed toward the backseat of the vehicle and retrieved it for the officer. Chandler asked if it was loaded, and, learning that it was, discharged it from the roadway into the ditch. Deputy Chandler then asked Michael what they shot at and where it was located. Michael responded that it was a raccoon, and it was in the bed of the vehicle. Deputy Chandler then asked both juveniles, Michael and Brock, whether they knew it was wrong to shoot from a roadway, and the youths responded that they understood that to be the law, but did not understand the question to be an accusation. Deputy Chandler also took Michael's spotlight. Deputy Chandler then let Michael and Brock leave in the truck with the raccoon.

20. Neither Michael nor Brock were asked if either one had shot from the road or from the truck.

21. Neither Michael nor Brock were informed of their rights.

22. Neither Michael nor Brock shot from the road, or from the truck, or in any way that violated Ind. Code § 14-22-6-9.

23. Deputy Chandler did not arrest Michael or Brock, nor did he indicate that they would be charged with firing from a roadway.

24. Deputy Chandler did instruct Michael to tell his parents what happened and to call the Sheriff to come pick up the gun and spotlight.

25. Michael's father, Tom Tully, retrieved the gun and spotlight from the Sheriff approximately five days later.

26. Approximately one month following the incident, Michael's parents, Tom and Carol Tully, received a letter instructing them to visit the Rush County Probation Department to discuss the events of December 23, 2006. If they failed to respond, they would be subject to sanctions from the court.

27. Rush County Chief Probation Officer Mark Fields informed Tom and Carol Tully that Michael and Brock were being charged as juveniles with shooting from a public highway in violation of Ind. Code § 14-22-6-9. Tom and Carol went to get the charges and the police report.

28. The Rush County Probation Department later conducted a Preliminary Inquiry and Investigation ('Preliminary Report'). Defendant Custer, the Rush County Juvenile Probation Officer, claims she did not conduct the preliminary inquiry and investigation, but she did write up and sign the Preliminary Report on February 27, 2007. The Preliminary Report concluded that Michael had violated Ind. Code 14-22-6-9. See Exhibit 'A.'

29. In the Preliminary Report, Defendant Custer provided a "recommended court disposition." Custer recommended: "Formal probation, no possession of a firearm or dangerous or deadly weapon until the age of 18 unless under direct supervision of child's father."

30. In the Preliminary Report, under the section "Reason for Recommendation," Custer wrote that Michael was willing to admit to having a loaded firearm in the truck, but would not admit to shooting from a public highway. Custer also wrote that according to Conservation Officer Gary Catron—who was not present for the events on the night of December 23, 2006—shooting from a public highway was the proper offense.

31. Plaintiff believes that, based on information from Rush County Chief Probation Officer Mark Fields, that Defendant Custer did not originally intend to recommend that charges be filed against Michael. Defendant Custer originally recommended informal adjudication, but decided to file the recommendation when Michael would not admit to firing from the road.

32. On February 28, 2007, Defendant Barada filed a "Verified Petition of Delinquency" ('Petition') in the Rush Juvenile Court. In the Petition, Barada swore under penalty of perjury that "[o]n or about the 23rd day of December, 2006, Rush County, Indiana, MICHAEL TULLY did hunt, shoot, shoot at, or kill an animal; or shoot at an object; from within, into, upon, or across a public highway in Indiana, all of which is against the peace and dignity of the State of Indiana and contrary to the form of the statute in such case made and provided to-wit: I.C. 14-22-6-9 and would constitute a Class 'C' Misdemeanor if committed by an adult." See Exhibit 'B.'

33. The filed date of the Petition was crossed out without explanation.

6

34. Barada was not present for and did not observe the events of December 23, 2006.

35. Barada included the Preliminary Report when he filed the Petition in the Rush County Juvenile Court, but it was not incorporated in the Petition.

36. Not until March 1, 2007, did Jim Myers, Chief Investigator for the Rush County Prosecutor, conduct an interview with Wayne Elwell. In the interview, Elwell did not state that he saw Michael fire a weapon from the road. See Exhibit 'C.'

37. On March 5, 2007, Judge Brian D. Hill, Judge of Rush Juvenile Court, issued an "Order Approving Filing of Delinquency Petition" filed by Barada.

38. On March 6, 2007, Michael and his parents were summoned to appear for a hearing on the Petition in the Rush Juvenile Court.

39. The Rush County Juvenile Court held a Fact-Finding Hearing on the charges against Michael on April 26, 2006, which was continued and completed on May 17, 2007.

40. At the hearing, Elwell testified but never stated that he saw Michael or anyone fire a weapon from the truck on the road.

41. At the close of the hearing, Judge Hill improbably found that the State had proved beyond a reasonable doubt that Michael had violated Ind. Code 14-22-6-9, and was thus a delinquent child. Judge Hill set the matter for a Dispositional Hearing.

42. On May 31, 2007, the Rush Juvenile Court held the Dispositional Hearing. Judge Hill ordered that Michael be placed on probation for six months, that he have a 10:00 p.m. curfew, and that he pay $160.00 in administrative and probation fees. Judge Hill also ordered that Michael's parents pay court costs in the amount of $157.00.

43. Also on May 31, 2007, Defendant Barada dismissed the charges against Brock Carfield, citing a lack of "trial quality evidence." See Exhibit 'D.'

44. The evidence against Brock Carfield alleged to fall short of "trial quality" was the exact same evidence that Defendant Barada contended proved beyond a reasonable doubt that Michael had fired a weapon from a roadway.

45. Michael appealed his adjudication to the Indiana Court of Appeals.

46. The Court of Appeals reversed, finding that there was insufficient evidence to support Michael's delinquency adjudication. See Exhibit 'E.'

47. The Court of Appeals found that the only evidence supporting Michael's adjudication was Elwell's testimony, which the Court of Appeals stated "amounts only to a scintilla of evidence that someone might have fired a gun from within or across the road. It is not substantial and probative evidence of [Michael's] guilt." (Emphasis in original) The Court of Appeals noted that the shots could have been fired by Michael or Brock, and that the shots could have been fired from the side of the road or from within or across the road.

48. On or around Monday, August 27, 2007, former Rush County Commissioner Lowell Angle fired a handgun at a neighbor's dog while he was riding his bicycle on a public road. The dog's owner reported the incident to the Sheriff's Department. Defendant Barada conducted his own investigation of the incident. Defendant Barada declined to file any charges against Angle, even though Angle admitted that he fired a weapon from a public road.

8

49. When Barada filed the Petition, the evidence suggesting Michael was guilty of shooting from a highway was so lacking in indicia of probable cause that it was unreasonable for Barada to believe probable cause existed.

50. Defendant Barada's conduct in attesting to facts about which he had no knowledge and lacked probable cause to believe were true, coupled with his decision not to pursue charges against Brock Carfield due to lack of "trial worthy evidence"—even though this was the very evidence Defendant Barada contended proved beyond a reasonable doubt that Michael fired a weapon from a roadway—and his refusal to file charges against Lowell Angle—who admitted to firing a weapon from a roadway—demonstrate a pattern of bad faith, malice, ill will, or reckless disregard for Michael's constitutional rights.

51. When Custer signed the Preliminary Report, the evidence suggesting Michael was guilty of shooting from a highway was so lacking in indicia of probable cause that it was unreasonable for Custer to believe probable cause existed.

52. As a direct and proximate result of Defendant Barada's sworn statement in the Petition and Defendant Custer's allegations in the Preliminary report, Michael was charged, wrongfully adjudicated a delinquent, and wrongfully placed on probation.

53. As a direct and proximate result of Defendants' actions, Michael suffered emotional distress, mental anguish, embarrassment, humiliation, loss of his liberty while on probation, and damages.

54. As a direct and proximate result of Defendants' actions, Michael was forced to pay attorney's fees for his defense in the delinquency adjudication and appeal.

9

## V.  CAUSE OF ACTION

Malicious Prosecution - § 1983

55.  Plaintiff re-alleges all of the facts and allegations set forth in paragraphs 1 through 54 as if fully set forth herein.

56.  By attesting to the facts alleged in the Petition and swearing to their truth under penalty of perjury, Barada was acting as a complaining witness.

57.  By affirming under penalty of perjury the allegations in the Petition while lacking probable cause to believe the allegations were true, Barada acted intentionally, maliciously, recklessly, and in bad faith.

58.  By alleging in the Preliminary report that Michael had fired a weapon from a highway, Custer was acting as a complaining witness.

59.  By so alleging while lacking probable cause to believe the allegation was true, Custer acted intentionally, maliciously, recklessly, and in bad faith.

60.  As a direct and proximate result of Defendants' actions, Michael was maliciously prosecuted, falsely adjudicated a delinquent child, and placed on probation, therefore depriving him of rights, privileges, and immunities guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

61.  WHEREFORE, Plaintiff respectfully requests the following relief:

    a.  To assume jurisdiction over this cause of action;

    b.  To award actual damages to Plaintiff to adequately compensate him for his injuries;

c.   To award punitive damages so as to deter Defendants and others in similar situations from like conduct;

d.   To grant Plaintiff costs of this action, reasonable attorney's fess, with interests, and all other relief which is just and proper; and

e.   To declare the conduct and practices of the Defendants unlawful.

## VI.  RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of state and federal law.

Respectfully submitted,

Michael K. Sutherlin
Atty. No. 508-49
Attorney for Plaintiff