UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL TULLY, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | 1:08-cv-1243-LJM-DML |
| ) | |
| RUSH COUNTY PROSECUTOR PAUL ) | |
| BARADA, in his individual capacity, and ) | |
| RUSH COUNTY JUVENILE PROBATION ) | |
| OFFICER CATHERINE CUSTER, in her ) | |
| individual capacity, ) | |
|     Defendants. ) | |

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

This matter comes before the Court on two separate motions to dismiss filed by the Defendants, Rush County Prosecutor Paul Barada ("Barada"), in his individual capacity, and Rush County Juvenile Probation Officer Catherine Custer ("Custer") in her individual capacity (collectively, the "Defendants"). Plaintiff, Michael Tully ("Tully"), initiated this 42 U. S. C. § 1983 action against the Defendants for allegedly violating his rights under the Fourth and Fourteenth Amendments to the United States Constitution. The Court has considered the parties' arguments and, for the following reasons, Defendants' motions to dismiss are **GRANTED**.[1]

---

[1] In addition, after an examination of the briefs and Tully's Complaint, the Court concludes that oral argument is unnecessary. Therefore, Tully's motion for oral argument is **DENIED**.

## I. **BACKGROUND**

For purposes of these Rule 12(b)(6) motions, the Court accepts as true the well-pleaded factual allegations from the Complaint. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d. 614, 618 (7th Cir. 2007). On December 23, 2006, Tully, then age 17, went raccoon hunting with a friend, armed with a .22 caliber rifle and a spotlight. Compl. ¶ 7. They drove Tully's father's truck to a bridge on County Road 350 East in Rush County, Indiana. *Id.* ¶ 8. Tully parked the truck on the side of the road, where his friend exited (gun in hand), crossed the road, and walked down into a ditch. *Id.* ¶ 9. Tully shined the spotlight on two raccoons that came out from under the bridge. *Id.* ¶ 10. Tully's friend fired at the raccoons, killing one of them. *Id.* He was not standing on the road when he shot the raccoon. *Id.* They deposited their quarry in the back of the truck and Tully drove away. *Id.* ¶ 11.

At roughly the same time, Wayne Elwell ("Elwell") was in his home, approximately 300-350 feet from the bridge. *Id.* ¶ 12. Elwell saw the truck's headlights near the bridge. *Id.* ¶ 13. He also saw a spotlight, which he mistakenly believed originated from near the truck. *Id.* In reality, the light was coming from down in the ditch. *Id.* A short time later, Elwell heard a gunshot coming from the general direction of the truck. *Id.* ¶ 14. He called the Sheriff's Department to report the gunfire. *Id.* ¶ 15. Shortly thereafter, Elwell heard a second shot. *Id.* ¶ 16. He looked out the window, saw someone go into the ditch, and called the Sheriff a second time. *Id.*

Deputy Sheriff Randy Chandler ("Deputy Chandler") responded to Elwell's call, but by the time he arrived at the bridge, no one was there. *Id.* ¶ 17. Deputy Chandler turned around to follow Tully's truck, which had just passed him, heading in the opposite direction.

*Id.* Deputy Chandler drove at a high rate of speed to catch up with Tully, but did not turn on his siren or emergency lights. *Id.* ¶ 18. Tully, ever mindful of the posted speed limit, pulled into a parking lot to allow what he perceived to be an irate driver to pass. *Id.* Only then did Deputy Chandler turn on his emergency lights and approach Tully's truck. *Id.*

Deputy Chandler questioned Tully regarding the gun, and Tully eventually retrieved it from the back seat and handed it to Deputy Chandler. *Id.* ¶ 19. Deputy Chandler asked Tully what he and his friend had shot; Tully said it was a raccoon. *Id.* Deputy Chandler asked Tully whether he knew it was wrong to shoot from a roadway. *Id.* Tully responded that he did, but did not understand the question to be an accusation. *Id.* Deputy Chandler did not arrest Tully and his friend, and allowed them to leave. *Id.* In no other way did Deputy Chandler indicate to Tully that he was suspected of firing from the roadway. *Id.* ¶ 23.

About a month after the incident, Tully and his parents received a letter instructing them to visit the Rush County Probation Department. *Id.* ¶ 26. Chief Probation Officer Mark Fields informed the Tully family that Tully and his friend were being charged as juveniles for shooting from a roadway. *Id.* ¶ 27. Custer, the Rush County Juvenile Probation Officer, conducted a Preliminary Inquiry and Investigation ("Preliminary Report"). *Id.* ¶ 28. Custer's Preliminary Report concluded that Tully had fired from the roadway in violation of Ind. Code § 14-22-6-9. *Id.* Custer recommended court disposition and that Tully be placed on formal probation, prohibiting him from possessing a firearm until he turned 18. *Id.* ¶ 29.

On February 28, 2007, Barada filed a Verified Petition of Delinquency ("Petition") in the Rush County Juvenile Court, although he had no personal knowledge of the events that

transpired during the night in question. *Id.* ¶¶ 32, 24. In the Petition, Barada swore under penalty of perjury that:

> On or about the 23rd day of December, 2006, Rush County, Indiana, MICHAEL TULLY did hunt, shoot, shoot at, or kill an animal; or shoot at an object; from within, into, upon, or across a public highway in Indiana, all of which is against the peace and dignity of the State of Indiana and contrary to the form of the statute in such case made and provided to-wit: I.C. 14-22-6-9 and would constitute a Class 'C' Misdemeanor if committed by an adult.

*Id.* Barada did not interview Elwell until March 1, 2007, the day after he filed the Petition. *Id.* ¶¶ 32, 36. Even then, Elwell did not attest to seeing Tully fire from the road. *Id.*

The Petition was approved by Judge Brian D. Hill of the Rush County Juvenile Court on March 5, 2007. *Id.* ¶ 37. A fact-finding hearing was held on April 26, 2007, which was continued on May 17, 2007. *Id.* ¶ 39. At the hearing, Elwell testified, but never stated that he saw Tully or anyone else fire a weapon from the truck or from the road. *Id.* ¶ 40. At the conclusion of the hearing, Tully was adjudicated a delinquent child. *Id.* ¶ 41. A dispositional hearing was held on May 31, 2007, at which Tully was placed on probation for six months, given a 10:00 p.m. curfew, and ordered to pay $317.00 in various fees and court costs. *Id.* ¶ 42. On that same day, Barada dismissed the charges against Tully's friend, for lack of "trial quality evidence." *Id.* ¶¶ 43-44. The charges against Tully's friend were based on the same evidence that was used to adjudicate Tully. *Id.*

Tully appealed his adjudication to the Indiana Court of Appeals, which reversed on December 28, 2007. *Id.* ¶¶ 45-46; Dkt. No. 1(6). The Court of Appeals found the evidence in support of Tully's adjudication insufficient to conclude beyond a reasonable doubt that Tully fired a weapon from a roadway. *Id.* ¶ 46; Dkt. No. 1(6). The court noted that the only evidence supporting the juvenile court's finding was the testimony of Elwell, who never

4

testified to seeing any shots fired from the road. *Id.* ¶ 47; Dkt. No. 1(6) at 5. The court concluded that to draw an inference from Elwell's testimony that Tully fired a weapon from the road "stretches the concept of circumstantial evidence beyond its breaking point." Dkt. No. 1(6) at 5. The court further concluded that "Elwell's testimony amount[ed] only to a scintilla of evidence that someone might have fired a gun from within or across the road. It [was] not substantial and probative of [Tully's] guilt." Complaint ¶ 47; Dkt. No. 1(6) at 5 (emphasis in original).

After the Court of Appeals reversed his adjudication, Tully filed this Complaint, alleging that it was unreasonable for Custer and Barada to believe there was probable cause that Tully fired a weapon from a public road. *Id.* ¶¶ 49, 51; Doc. No. 1(6) at 5. Custer and Barada's conduct caused Tully to be wrongfully adjudicated a delinquent and placed on probation, which in turn caused Tully to suffer emotional distress, mental anguish, embarrassment, humiliation, loss of liberty, and damages. *Id.* ¶¶ 52-53. In addition, Tully alleged that Custer acted as a complaining witness when she stated in her Preliminary Report that Tully fired a weapon from a highway. *Id.* ¶ 58. By making such a statement without probable cause to believe in its truth, Custer acted intentionally, maliciously, recklessly, and in bad faith. *Id.* ¶ 59. Tully also alleged that Barada acted as a complaining witness when he attested to the facts stated in the Petition and swore to their truth. *Id.* ¶ 56. By affirming under penalty of perjury the truth of the allegations in the Petition without probable cause to believe in their truth, Barada acted intentionally, maliciously, recklessly, and in bad faith. *Id.* ¶ 57. Lastly, and most importantly for purposes of these motions, Tully alleges that Custer and Barada's actions violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. *Id.* ¶ 60.

## II. STANDARD

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but a plaintiff's complaint may not merely state "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" not when the plaintiff only raises a "sheer possibility that the defendant has acted unlawfully." *Id.*[2]

## III. DISCUSSION

Defendants contend that Tully's Complaint attempts to assert a violation of his purported right to be free from prosecution without probable cause. Defendants argue that, because there is no constitutional right to be free from prosecution without probable cause, Tully has failed to state a § 1983 claim upon which relief may be granted.

---

[2] Defendant Custer filed her motion to dismiss after filing her answer. *Compare* Doc. No. 16, *with* Doc. No. 20. Therefore, her motion to dismiss is actually a Rule 12(c) motion for judgment on the pleadings. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 757 n.1 (7th Cir. 2006). Such motions are evaluated under the same standards as a Rule 12(b)(6) motion. *Id.*

The Court agrees. The first step in any § 1983 cause of action is to identify the specific constitutional right that was allegedly violated. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994). Based on the face of Tully's Complaint, it is clear that Tully has sued the Defendants for what amounts to the alleged deprivation of his right to be free from prosecution without probable cause. Compl. ¶ 60. However, "there is no constitutional right not to be prosecuted without probable cause." *Penn v. Harris*, 296 F.3d 573, 576 (7th Cir. 2002). Therefore, based on the face of his Complaint, Tully has failed to state a viable § 1983 claim. *Id.*

Tully attempts to save his Complaint in his briefs, by arguing that although he entitled his cause of action "Malicious Prosecution - § 1983," his Complaint successfully states a Fourth Amendment violation. *Compare* Compl. at § V., *with id.* ¶ 60. Tully's Complaint alleges only that the Defendants caused Tully to be "maliciously prosecuted, falsely adjudicated a delinquent child, and placed on probation, therefore depriving him of rights, privileges, and immunities guaranteed by the Fourth [Amendment] . . . to the United States Constitution." *Id.* ¶ 60. These allegations do not state a Fourth Amendment violation, because Tully's Complaint does not contain an allegation that he was subjected to an unreasonable search. *Compare generally* Compl., *with* U.S. CONST. amend. IV. Nor does Tully's Complaint contain any contention that his person or property was unreasonably seized at anytime during the Defendants' investigation. *Compare generally* Compl., *with* U.S. CONST. amend. IV. A mere mention of the Fourth Amendment, without any factual allegation indicating a search or a seizure took place, let alone an unreasonable one, is not sufficient to state a § 1983 claim. *Iqbal*, 556 U.S. ----, 129 S.Ct. 1937 at 1949-1950.

Apparently, Tully would like the Court to adopt the view that being summoned to his April 26, 2007, fact-finding hearing was a seizure within the contemplation of the Fourth Amendment. However, the Seventh Circuit has already rejected this notion. See *Bielanski v. County of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) ("[W]e conclude that a summons alone does not equal a seizure for Fourth Amendment purposes. . . . [A] false accusation is not a seizure."). Tully's purported interest in not being prosecuted groundlessly is not an interest that the Fourth Amendment protects. *Bielanski*, 550 F.3d at 638 (citing *Wallace v. City of Chicago*, 440 F.3d 421, 425 (7th Cir. 2006); *Wiley v. City of Chicago*, 361 F.3d 994, 998 (7th Cir. 2004)). Similarly, after Tully's initial April 26, 2007, fact-finding hearing, the Fourth Amendment "drops out of the picture," thereby foreclosing any claims based upon his subsequent adjudication or the imposition of conditions of probation. See *Bielanski*, 550 F.3d at 642 (quoting *Hernandez v. Sheahan*, 455 F.3d 772, 777 (7th Cir. 2006)).

Tully also attempts to save his Complaint by drawing the Court's attention to allegations in his Complaint that the Defendants' conduct violated his rights under the Fourteenth Amendment. Compl. ¶ 60. Tully relies upon the procedural component of the Fourteenth Amendment, as the Seventh Circuit has already determined that substantive due process does not provide protection from malicious prosecution. *See Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001) ("Claims of malicious prosecution should [not] be analyzed . . . under . . . substantive due process . . . ."). However, Tully has confused the impact that procedural due process may have on the availability of a cause of action for malicious prosecution, with the incorrect notion that the Defendants have somehow violated his procedural due process rights by maliciously prosecuting him.

In *Newsome*, the Seventh Circuit distilled a two-part test from Justice Kennedy's concurring opinion in *Albright v. Oliver*, 510 U.S. 266 (1994), for determining when a plaintiff may have a constitutional tort claim for malicious prosecution. *Newsome*, 256 F.3d at 750-51. First, the plaintiff must demonstrate that he did not have "an adequate opportunity to defend himself in the criminal prosecution." *Id.* In other words, was the plaintiff denied a "fair trial" due to a violation of one of his constitutional rights? *See id.* at 752 ("Newsome . . . did not receive a fair trial if the prosecutors withheld material exculpatory details.") (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). As stated above, Tully's Complaint essentially asserts a violation of his right to be free from prosecution without probable cause. This right is not protected by the Constitution. *Penn*, 296 F.3d at 576; *see also Albright*, 510 U.S. at 283 (Kennedy, J., joined by Thomas, J., concurring) ("In sum, the due process requirements for criminal proceedings do not include a standard for the initiation of criminal prosecution."). Therefore, Tully's Complaint does not make it past the first step of *Newsome*'s two-part test. *See Newsome*, 256 F.3d at 750-51.

It is only after the first step of *Newsome*'s two-part inquiry is satisfied that a court goes on to consider the second step: Does a state court provide the plaintiff with an adequate opportunity to obtain compensation for the violation of one of his constitutional rights that resulted in the plaintiff being denied a fair trial? *Newsome*, 256 F.3d at 750-51 (holding that where state law provides a remedy for malicious prosecution (as Illinois law did in *Newsome*), there is no § 1983 claim available) (citing *Albright*, 510 U.S. at 283-286 (Kennedy, J., joined by Thomas, J., concurring)). Under this step, a court may someday be called upon to decide whether a defendant's immunity renders an otherwise available state law remedy inadequate, thereby violating the plaintiff's procedural due process rights.

See *Daniels v. Williams*, 474 U.S. 327, 333 n.1 (1986) (declining to resolve "whether . . . the possibility of a sovereign immunity defense in a [state] tort suit would render that remedy "inadequate" under *Parratt* [*v. Taylor*, 451 U.S. 527, 543-44 (1981)] and *Hudson v. Palmer*, 468 U.S. 517[, 533] (1984))."); *see also Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 790 n.2 (7th Cir. 1991) (observing that the Indiana Tort Claims Act "may fail to provide an adequate remedy" because of its immunity provisions, but declining to resolve the issue); *see also Grosz v. Indiana*, 730 F.Supp. 1474, 1480 (S.D. Ind. 1990) (Tinder, J.) ("[I]f procedural due process requires a *meaningful* opportunity to be heard, then it seems that immunity in state court would foreclose such an opportunity and render the remedy inadequate.") (emphasis in original).  Tully urges the Court to resolve the issue in this case, because the Defendants enjoy immunity from any state action for malicious prosecution.  *See* Ind. Code § 34-13-3-3(6) (The Indiana Tort Claims Act); *see also Livingston v. Consolidated City of Indianapolis*, 398 N.E.2d 1302, 1305 (Ind. Ct. App. 1972) ("[T]he legislature fully intended to extend immunity to the State of Indiana and other political subdivisions and their police officers in actions for malicious prosecution.").  However, as Tully has failed to satisfy the first step of *Newsome*'s two-part test, the Court declines to do so.

## IV.  CONCLUSION

For the foregoing reasons, the Motions to Dismiss of Defendants, Rush County Prosecutor Paul Barada, in his individual capacity, and Rush County Juvenile Probation Officer Catherine Custer, in her individual capacity, are **GRANTED**.

IT IS SO ORDERED this 7th day of August, 2009.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

David A. Arthur
INDIANA OFFICE OF THE ATTORNEY GENERAL
David.Arthur@atg.in.gov

Corinne T.W. Gilchrist
OFFICE OF THE ATTORNEY GENERAL
corinne.gilchrist@atg.in.gov

Kirk A. Horn
MANDEL POLLACK & HORN
khorn@mplaw.net

Michael K. Sutherlin
MICHAEL K. SUTHERLIN & ASSOCIATES, PC
msutherlin@gmail.com